## The STATE of Ohio

v.

## NEELEY.

Municipal Court of Findlay, Ohio.

Nos. 96–TRC–686–A, 96–TRC–686–B and 96–TRC–686–C.

Decided Sept. 15, 1997.

*Donald J. Rasmussen,* Assistant City Law Director, for plaintiff.

*Jeffrey v. Hawkins,* for defendant.

REGINALD J. ROUTSON, Judge.

On August 12, 1997, this matter came on for hearing pursuant to a motion to suppress evidence filed by the defendant, Billie J. Neeley. All parties appeared in court and evidence was adduced. Upon consideration of the evidence, the court, having taken the matter under advisement, hereby rules as follows.

## STATEMENT OF FACTS

On or about January 21, 1996, Trooper Lawrence St. Clair was on duty patrolling the northern portion of Hancock County, Ohio. At approximately 10:35 p.m., he received a dispatch that a "possible DUI" was headed south on Interstate 75. The vehicle was described as an older Buick with one headlight out. Trooper St. Clair proceeded to the southbound entrance of I–75 near Township Road 99 and waited. Soon thereafter he observed a vehicle that matched the description, and fell in behind at a distance of approximately three to four car lengths. Trooper St. Clair clocked the vehicle traveling at approximately seventy miles per hour. He next observed the vehicle leave the Interstate at Exit No. 159, traveling at a high rate of speed. As the vehicle approached the top of the exit ramp, it had to brake hard to come to a full stop. The vehicle then

turned on Trenton Avenue without benefit of a signal, and straddled both lanes as it approached the intersection of Trenton and Broad in the city of Findlay. The subject vehicle then made an abrupt lane change and turned north onto Broad Avenue. Trooper St. Clair described the turn as very wide, indicating that the vehicle almost struck the right curb. While proceeding down Broad Avenue, Trooper St. Clair observed the vehicle weaving in both lanes of travel. He then activated his pursuit lights and stopped the subject vehicle on Broad Avenue. Trooper St. Clair approached the vehicle and identified the operator as the defendant, Billie J. Neeley.

While making his initial inquiry, Trooper St. Clair noted that the defendant slurred and mispronounced several words as she answered his questions. Trooper St. Clair detected that the defendant had puffy eyes, and even observed an alcohol container in the motor vehicle. Upon further inquiry, the defendant denied alcohol consumption, but admitted that she had taken several prescription medications before she left North Baltimore to head back to Findlay, Ohio.

Based upon this information, Trooper St. Clair asked the defendant to exit her vehicle and perform several field sobriety tests. As the defendant walked from her vehicle to the cruiser, Trooper St. Clair noticed that she was unsteady on her feet. In the cruiser, the defendant submitted to the horizontal gaze nystagmus test ("HGN") and exhibited no signs of intoxication. Trooper St. Clair also offered the defendant a portable breath test. The defendant submitted, and the results showed no alcohol consumption.

At this point, Trooper St. Clair was still suspicious of the defendant's condition, so he asked her to exit the vehicle and perform several other field sobriety tests. The defendant performed poorly on the walk-and-turn and one-leg-stand tests, indicating to Trooper St. Clair that she was obviously impaired.

Based upon all the information gathered by Trooper St. Clair, he formed an opinion that the defendant was under the influence of a drug of abuse, and arrested her for a violation of R.C. 4511.19(A)(1).

## CONCLUSIONS OF LAW

It is clear that the stop of a motorist is a seizure governed by Fourth Amendment requirements. See *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. Therefore, a police officer who stops a vehicle must possess, at the very least, a reasonable suspicion of illegal activity based upon specific and articulable facts. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. See, also, *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 534 N.E.2d 906. The length of such seizure may continue beyond its original purpose only if the officer ascertains the suspicion of additional criminal activity. See

*State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237. See, also, *State v. Gustin* (1993), 87 Ohio App.3d 859, 623 N.E.2d 244. While a police officer need not possess probable cause to request field sobriety tests of a suspect, the officer must have a reasonable and articulable suspicion of impairment to continue. *Columbus v. Anderson* (1991), 74 Ohio App.3d 768, 600 N.E.2d 712.

These principles were applied in *Gustin, supra,* wherein the court found that an officer lacked reasonable suspicion of a motorist's physical condition that would have required him to submit to the horizontal gaze nystagmus test, when the only evidence of impairment was the admission of the consumption of one beer. The court concluded that continued detention of a motorist beyond a routine traffic stop must be supported by additional evidence of impairment that would lead a reasonable officer to believe that the motorist was operating his vehicle while under the influence of alcohol or a drug of abuse.

In the case at bar, after Trooper St. Clair administered the horizontal gaze nystagmus in his cruiser and obtained a pass on the portable breath-testing machine, he continued his investigation and requested that the defendant submit to additional field sobriety tests. The defendant argues that once Trooper St. Clair obtained no clues on the HGN, and a pass on the portable breath-testing machine, he had to discontinue his investigation and release the defendant. The state argues that Trooper St. Clair was fully justified in the continuation of his roadside stop.

R.C. 4511.19(A) prohibits several separate and distinct crimes, including the operation of a vehicle while under the influence of alcohol and/or a drug of abuse. If the officer's only suspicion was that the defendant was operating a vehicle while under the influence of alcohol, the court would agree with the defendant's analysis. However, the law also prohibits a person from operating a vehicle while under the influence of a drug of abuse. Trooper St. Clair testified that he continued his investigation and requested that the defendant perform the walk-and-turn and one-leg-stand tests to determine whether she was impaired from other substances, since the defendant had previously admitted the ingestion of drugs prior to her operating the vehicle. Trooper St. Clair testified that these tests helped him to determine whether the person is impaired not only from alcohol but from drugs.

Based upon a totality of the circumstances, the court finds that Trooper St. Clair's continued investigation to determine the existence of the defendant's impairment was reasonable. Once the officer was certain that the defendant was not under the influence of alcohol, his investigation focused solely on the defendant's possible impairment from drug ingestion. His shift in investigative purpose was supported by his observations and the defendant's own admissions.

30

Further, these additional tests did not consume a significant amount of time and were therefore reasonable, as they were both limited in scope and duration.

■ Further, the court finds that the length of the defendant's detention, notwithstanding the fact that she was in the officer's cruiser for a period of time, does not constitute custody for purposes of Fifth Amendment protections. *State v. Warrell* (1987), 41 Ohio App.3d 286, 534 N.E.2d 1237. Therefore, the fact that Trooper St. Clair did not provide the defendant with *Miranda* warnings until such time as he placed her under arrest does not subject to suppression any statements made by the defendant prior to her arrest.

As a result thereof, the court finds that the defendant's motion to suppress evidence is not well taken, and is hereby overruled.

This matter is therefore ORDERED set for trial.

*Motion denied.*